**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| SADRENA STALLWORTH, | : | |
| Plaintiff, | : | Case No. 3:08cv00036 |
| vs. | : | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | : : | Magistrate Judge Sharon L. Ovington |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

## I.  INTRODUCTION

Plaintiff Sadrena Stallworth has performed multiple jobs during her life, working as a cashier/clerk, a customer service representative, a daycare worker, a fast-food cook, and a factory worker. (Tr. 69). She stopped working on December 1, 2002 due to a social anxiety disorder and a major depressive disorder. (Tr. 68-69). On August 27, 2003, Plaintiff filed applications with the Social Security Administration seeking Supplemental Security Income (SSI) and Disability Insurance Income (DIB). She claimed in her applications that beginning on December 1, 2002, she could no longer work due to social anxiety disorder and major depressive disorder. (Tr. 68-69).

After various administrative proceedings, Administrative Law Judge (ALJ) Daniel R. Shell denied Plaintiff's DIB and SSI applications based on his conclusion that her impairments did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 18-27). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

decisions are subject to judicial review, *see* 42 U.S.C. §405(g) and 1383(c)(3), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #9), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's decision and a remand to the Social Security Administration for payment of benefits, or at a minimum, a remand to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II. BACKGROUND

At the time of the ALJ's decision, Plaintiff's age (36) placed her in the category of a "younger person" for purposes of resolving her DIB and SSI applications. *See* 20 C.F.R. §§404.1563(c), 416.963(c); s*ee also* Tr. 25. Plaintiff has a high school education and has received additional training at a community college in "nursing assistance." *See* Tr. 73. She is single and has a son age fifteen and a daughter age seven, who live with her. (Tr. 380-81).

Plaintiff testified during the ALJ's hearing that she has difficulty with people and social situations because of anger episodes and arguing with coworkers. (Tr. 380). She had been briefly enrolled (for two weeks) in a program at the Job Center. She is required to attend the program every day but on her bad days she will call in and she is then excused for that day. (Tr. 381-82). She testified that during the two weeks she has been enrolled at the Job Center she has called off three times. (Tr. 385).

As to her daily activities, Plaintiff testified that she has a driver's license but does not drive. (Tr. 382). She has difficulty with the bus system. She does not belong to a club, social organization, or church because she does not like public places. *Id*. Her mom or sister takes her to grocery shopping. She explained, "Typically I don't like being in the grocery store. I don't like being in like the church. That's one reason I don't go places

2

where there's a lot of people. I get headaches, just the stress of just being around a bunch of other people." (Tr. 382-83).

On a typical day she hits the snooze button several times but gets up eventually to get her children ready for school. She does not have much difficulty getting the children ready because her teenage son functions independently and her seven-year-old daughter only requires monitoring. (Tr. 381).

When asked why she took jobs that required her to be around people, she responded that she needed a job so she took any job that was offered. (Tr. 384). She explained that she had been fired from several jobs for threatening co-workers, not following a supervisor's instructions, not showing up for work, not getting along with people, disrupting training class, and hanging up on a customer. (Tr. 384, 387-88). She testified that some jobs she left because she was having a bad day and could not take it. She explained, "You know, I get depressed and crying spells and some of my employers will just let me go home early, and the ones just, you know, can't call off or whatever or if I'm new because I've been there, you know, less than 90 days, I just quit, you know, because they, they're to the stage when I just can't even go in, you know." (Tr. 386).

Turning to the other evidence and other information in the administrative record, the parties have provided informative and detailed descriptions of that evidence. *See* Doc. #6 at 3-10; Doc. #8 at 1-5. In light of this, and upon consideration of the complete administrative record, additional detailed discussion of the record would be unnecessarily duplicative. Yet a brief description of the medical sources upon whom the parties rely will help frame further review.

Plaintiff relies on the opinions of her treating psychiatrist Dr. Gollamudi, with whom she began treating on July 17, 2003. (Tr. 242-43). Over the next few months Dr. Gollamudi observed Plaintiff's anxious and depressed mood and affect. (Tr. 235-238). And he initially diagnosed her with and an adjustment disorder with depressive features and a generalized anxiety disorder, and assigned a GAF of 60 (Tr. 241), referring to

3

"moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."[2] Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at p. 34 (DSM-IV-TR).

Plaintiff also began individual counseling with Michele Knapp, L.S.W., at Advanced Therapeutic Services, Inc. in July 2003 simultaneous with her psychiatric treatment. (Tr. 295). During Plaintiff's first seven visits from July, 2003, to February, 2004, Ms. Knapp noted repeated fluctuation of affect. Ms. Stallworth was "confused and overwhelmed" on July 17, 2003; "calm – less talkative" on July 24, 2003; "irritated and overwhelmed" on July 28, 2003; "positive and hopeful" on September 24, 2003; "anxious and overwhelmed" on January 8, 2004; "responsive and hopeful" on January 20, 2004; and "anxious and regretful" on February 3, 2004. (Tr. 289-295). There was no indication in Ms. Knapp's notes from this period that Ms. Stallworth's condition had improved. *See id*.

Dr. Gollamudi noticed a worsening of symptoms from July 2003 to January 2004. Plaintiff did not feel Effexor was working, and she wanted to see what would happen if she were off medications. (Tr. 237). By January 2004 Plaintiff reported depression, feelings of hopelessness, insomnia, and passive suicidal ideation. Dr. Gollamudi observed that Plaintiff's mood and affect were depressed, and he prescribed Zoloft. (Tr. 236).

From February 2004 to April 2004, Dr. Gollamudi observed mild improvements in Plaintiff's mental conditions. (Tr. 234-235, 286-288). Yet even on Zoloft, Plaintiff reported feeling more hopeless. Dr. Gollamudi increased Zoloft. And at her next appointment, Plaintiff reported that the increase in Zoloft helped the depression and anxiety. She felt less hopeless and more motivated so that she was able to start school

---

[2] "GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed. Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at 32-34.

4

again. However, she also described hypomanic symptoms of irritability, impulsivity, increased energy, and racing thoughts. Dr. Gollamudi suspected Plaintiff had a bipolar disorder. (Tr. 234).

On July 28, 2004, Plaintiff reported to Dr. Gollamudi that she had been depressed, tired, cranky, irritable, antisocial behavior. She had stopped taking Zoloft in May 2004. Dr. Gollamudi diagnosed her with a bipolar disorder not otherwise specified and restarted the Zoloft and added Trileptal. (Tr. 233).

On August 11, 2004, Dr. Gollamudi completed a Mental Functioning Capacity Assessment form. (Tr. 214-15). He checked boxes indicating his opinion that Plaintiff was "markedly limited" in her ability to:

- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- interact appropriately with the general public;

- accept instructions and respond appropriately to criticism from supervisors; and

- get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

(Tr. 214). In his written explanation, Dr. Gollamudi noted that Plaintiff had been diagnosed with Generalized Anxiety Disorder, Dysthymic Disorder (with agitated depression). (Tr. 215). He further noted that Plaintiff struggles with Social Anxiety and a tendency towards compulsive behavior." (Tr. 215). Dr. Gollamudi concluded that Plaintiff was unemployable for at least 30 days to nine months. *Id*.

In April 2005 Plaintiff began seeing a new mental health counselor, Brenda Haney, L.I.S.W., L.C.D.C. III, and she continued to treat with Dr. Gollamudi during 2005

5

through at least mid-June 2006. (Tr. 266). On June 19, 2006, Dr. Gollamudi and Ms. Haney jointly completed a report concerning Plaintiff's ability to sustain the mental demands of work on a regular and continuing basis. (Tr. 266-73). Dr. Gollamudi noted that Plaintiff would not be able to respond appropriately to supervision, co-workers and customary work pressures due to her mood swings with inappropriate anger outbursts, her unrealistic suspicions of others, and her anxiety in crowds or crowded situations. Dr. Gollamudi did not think that Ms. Stallworth would be able to withstand the pressure of meeting even normal standards of work productivity and work accuracy due to her irrational fears and anxiety over feeling "judged." (Tr. 268). Neither Dr. Gollamudi nor Ms. Haney thought that Plaintiff could maintain the mental demands of work. (Tr. 268-73).

The Commissioner relies on the opinions of psychologist Dr. Kramer, who examined Plaintiff in January 2004 for the Ohio Bureau of Disability Determinations. (Tr. 155-61). Dr. Kramer diagnosed Plaintiff with Depressive Disorder (not otherwise specified) and Anxiety Disorder (not otherwise specified), and he assessed Plaintiff's GAF at 60. (Tr.. 160). Dr. Kramer assessed, in part, Plaintiff's abilities to perform four categories of mental work activities.[3] Dr. Kramer opined that Plaintiff's had a moderate impairment in her ability to relate to co-workers and supervisors due to social anxiety and depression. *Id.* She reported some irritability and problems with temper control and frustration tolerance with co-workers. *Id.* Dr. Kramer observed, "At the same time, however, she was pleasant and cooperative and interacted appropriately in today's examination, although she obviously was very tense and ill at ease." *Id.* Dr. Kramer believed that anxiety and depression caused Plaintiff only a slight impairment in her ability to understand, remember, and follow instructions and in her ability to maintain attention, concentration, persistence, and pace. *Id.* According to Dr. Kramer, Plaintiff

---

[3] Under the Commissioner's Regulations, the severity of a mental impairment is classified as either mild, moderate, marked, or extreme. 20 C.F.R. §416.920a(c)(4).

had no significant cognitive problems, and depression and anxiety cause a moderate impairment in her ability to withstand the stress and pressure of day-to-day work activities. *Id*.

The Commissioner also relies on the opinions of Dr. Goeke, a psychologist who reviewed the record in January 2004 for the Ohio Bureau of Disability Determinations. (Tr. 163-78). Dr. Goeke wrote:

> The clt's [claimant's] cognitive functioning is sufficient to understand, remember, and carry out routine tasks. She could concentrate on simple tasks and make basic work-related decisions. The clt could sustain superficial or occasional interactions with others. She is socially avoidant but can relate cooperatively; anxiety and depression limits [sic] her ability to work with the public frequently. A nonpublic setting with minimal social demands would be preferable. She could cope with common changes in a familiar work setting. Due to emotional factors, MRFC [mental residual functional capacity] is limited to work settings that do not require meeting production line schedules or coping with a fast paced environment.

(Tr. 178).

### III.  ADMINISTRATIVE REVIEW

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986). A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 23-31; *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).[4] Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In the present case the ALJ found at Step 2 that Plaintiff had the severe impairments of hypertension and pes lanus (flatfeet).[5] (Tr. 26). The ALJ concluded that Plaintiff's mental impairments were not severe. (Tr. 21-22).

At Step 3 the ALJ concluded that Plaintiff's hypertension and pes lanus did not meet or equal the criteria set forth in the Listings. (Tr. 26).

At Step 4 the ALJ found that Plaintiff had residual functional capacity to perform

---

[4] The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations. Plaintiff meets the insured-status requirement for DIB eligibility through December 2008. *See Colvin*, 475 F.3d at 730; *see also* Tr. 36.

[5] Taber's Cyclopedic Medical Dictionary, p. 1564 (19th Ed. 2001).

the full range of medium work. (Tr. 26). Under the Regulations, "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §416.967(c). The ALJ further determined at Step 4 that Plaintiff retained the ability to perform her past relevant work. (Tr. 26-27). Because of this determination, the ALJ stopped his sequential evaluation at Step 4 and concluded that Plaintiff was not under a "disability" within the meaning of the Social Security Act. (Tr, 26-27).

As part of his decision, the ALJ also included an "Alternative Decision." (Tr. 25-26). In doing so, the ALJ concluded at Step 2 that if Plaintiff's mental impairments were found to be severe, "she would have been limited to low stress work, which in this case would have been defined as no direct dealing with the public, no production quotas, and no close or 'over-the-shoulder' production quotas." (Tr. 25).

The ALJ did not make any alternative Step 3 findings. *See* Tr. 25-26. The ALJ determined alternatively at Step 4 that Plaintiff would not be able to perform the full range of medium work. The ALJ therefore reached Step 5 in his Alternative Decision, finding that a significant number of a jobs that Plaintiff could perform – that is a reduced range of medium jobs – existed in the regional and national economies. (Tr. 25-26).

The ultimate conclusion of both the ALJ's Decision and his Alternative Decision was the same – Plaintiff was not under a disability and hence not eligible to receive SSI or DIB. (Tr. 25-27).

**IV. JUDICIAL REVIEW**

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S.

9

389,401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors).

Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

V.  **DISCUSSION**

   A.  **The Parties' Contentions**

Plaintiff contends that the ALJ erred at Step 2 of his sequential analysis by failing to find that she suffered from a severe mental impairment.

The Commissioner maintains that the ALJ's alternative Decision properly found that Plaintiff's mental impairments were severe and reasonably limited her to low stress (no direct public contact, no production quotas, and no over-the-shoulder supervision) medium work. The Commissioner points out that the ALJ then continued the Step 5 of the sequential evaluation, thus properly finding that Plaintiff was not under a disability.

Plaintiff also contends that substantial evidence does not support the ALJ's evaluation of the opinions of treating psychiatrist Dr. Gollamudi, especially given the longitudinal record of treatment supporting his opinions, and since his opinions were consistent with those of the treating mental health counselors. Plaintiff further asserts that the ALJ failed to evaluate Dr. Gollamudi's opinions under the Commissioner's own Rules and Regulations.

The Commissioner contends that the ALJ reasonably relied on the opinions of Drs. Kramer and Goeke. And, according to the Commissioner, the ALJ properly rejected Dr. Gollamudi's opinions by applying the "supportability" and "consistency" factors as permitted by the Regulations.

### B. <u>Medical Source Opinions</u>

Social Security Regulations require ALJs to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. §416.927(d). The required evaluation first focuses on treating physicians or psychologists, whose opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. §416.927(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). When these requirements are not met, the treating physician rule does not apply. *Id*.

Once the ALJ has concluded that the treating physician rule does not apply to a particular treating source's opinion, the evaluation has only just begun. The ALJ must continue to evaluate the treating source's opinion under several remaining factors described by the Regulations, including "supportability," "consistency," "specialization," and "other factors" brought to the ALJ's attention. 20 C.F.R. §416.927(d)(2)-(6); *see Wilson*, 378 F.3d at 544.

As to non-treating medical sources – such as one-time examiners or medical experts who testify during the administrative hearing – ALJs must evaluate their opinions under the same factors applicable to treating medical sources – supportability, consistency, specialization, *etc*. *See* 20 C.F.R. §416.927(d), (f). The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see also* 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

### C. <u>Analysis</u>

In finding at Step 2 that Plaintiff mental impairment was not severe, the ALJ addressed only whether the opinions of Dr. Gollamudi deserved controlling weight under the treating physician rule without continuing to weigh this treating specialist's opinion under the remaining factors required by the Regulations. The ALJ's evaluation of Dr. Gollamudi's opinions consisted of the following:

> Dr. Gollamudi reported that the claimant would be unemployable for nine months or less, which fails to meet the durational requirement. In response to interrogatories from counsel, he reported that the claimant would be unable to maintain competitive employment due to her psychiatric symptoms, but his opinion is not supported by the treatment notes. As such, it must be rejected.

(Tr. 23). This evaluation falls short of applying the legal criteria mandated by the

Regulations. Even if arguably this evaluation is construed to mean that Dr. Gollamudi's opinion did not deserve controlling weight, the ALJ did not continue his evaluation under the remaining factors required by the Regulations. "When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status not withstanding." *Rogers*, 486 F3d at 242 (citations omitted); *see also Wilson*, 378 F.3d at 544-45.

As to the treatment records, the ALJ did not discuss in what way Dr. Gollamudi's opinions are inconsistent with treatment notes. The only reference that ALJ makes to treatment records from Dr. Gollamudi's office was to note, "Treatment notes indicate that she saw her therapist on a biweekly basis, and the psychiatrist once a month. The psychiatrist's progress notes indicated a positive response to medication." (Tr. 20). The progress notes indicate an intermittent response to medications. In fact, it was not until July, 2004, that Dr. Gollamudi diagnosed Plaintiff as suffering from bipolar disorder, as opposed to anxiety and depression. At that time he placed her on both Zoloft and Trileptal, a mood stabilizer. (Tr. 233). Plaintiff thereafter continued to need adjustments to her medication. *See, e.g.*, Tr. 227. Even with adjustments, Plaintiff continued to struggle. For example, in April, 2006, Plaintiff reported to her therapist, Ms. Haney that she had recently been terminated from her school program due to her behavior. (Tr. 227). She was again tearful and reported being "tired of not being able to deal with people and situations." *Id*. Plaintiff's mental condition did not improve much from April to June 2006. During each visit, Ms. Haney observed that Plaintiff's mood was depressed and her affect was tearful or angry. Plaintiff also expressed negative thoughts and feelings during each session with Ms. Haney from April to June 2006. *See*

13

Tr. 274-76. Dr. Gollamudi continued to treat Plaintiff with Zoloft and Trileptal. (Tr. 221). In light of such evidence and Dr. Gollamudi's status as a long-term treating specialist, the ALJ's conclusory rejection of his opinions without applying the required legal criteria constituted error. *See Rogers*, 486 F3d at 242-43; *see also Wilson*, 378 F.3d at 544-45.

The ALJ, moreover, did not rely on another medical source opinion to support his findings in either his Decision or Alternative Decision. *See* Tr. 21-26. As a result, he erred by substituting his own lay medical opinion about the treatment notes written by Dr. Gollamudi as a basis for rejecting Dr. Gollamudi's medically-based understanding of the treatment notes. This constituted error, since "an ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *see Meece v. Barnhart*, 2006 WL 2271336, *8 (6th Cir. 2006)("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2nd Cir. 1999)("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."); *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004)(ALJ improperly rejected treating physician's opinion "because of the ALJ's own credibility judgments, speculation or lay opinion."); *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996)("the ALJ clearly overstepped his bounds when he substituted his medical judgment for that of Dr. Spray..."); *Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir. 1998)("In the absence of a medical opinion to support the ALJ's finding as to Balsamo's ability to perform sedentary work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." (internal citation omitted)); *Gonzalez v. Apfel*, 113 F.Supp.2d 580,

14

590 (S.D.N.Y. 2000) (same).

The ALJ's alternative Decision concerning Plaintiff's mental impairments does not eliminate his errors. In his alternative decision, the ALJ assessed Plaintiff's mental work abilities as "limited to low stress work, which in this case would have been defined as no direct dealing with the public, no production quotas, and no close or "over-the-shoulder" [supervision]. (Tr. 25). Yet this assessment is far more generous than the opinion of the treating specialist/ psychiatrist Dr. Gollamudi. The ALJ, moreover, provided no analysis as to how he reached these alternative limitations in light of the record before him. The ALJ provided no analysis of any opinion of record in determining this alternative finding of residual functional capacity. In addition, the ALJ's Alternative Decision is legally flawed because it wholly lacks a Step 3 analysis of whether Plaintiff's severe physical and mental impairments, alone or in combination, meet or equal the criteria of a Listing-level impairment. *See* Tr. 25-27. For the above reasons, therefore, substantial evidence does not support the ALJ's findings in his Alternative Decision.

There remains the possibility that the ALJ's errors were harmless. "A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. '[A] procedural error is not made harmless simply because the [aggrieved party] appear to have had little chance of success on the merits anyway.' To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with §1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action ... found to be ... without observance of procedure required by law.'" *Wilson*, 378 F.3d at 546 (internal citations omitted).

A review of Dr. Gollamudi's opinions does not reveal that they were wholly

15

unsupported or otherwise "so patently deficient that the Commissioner could not possibly credit..." them. *Wilson*, 378 F.3d at 547; *see supra*, §II (and transcript pages cited therein).

Accordingly, Plaintiff's challenges to the ALJ's non-disability Decision are well taken.

## VI.   REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. This is so because the record essentially contains an unresolved battle between the opinions of Dr. Gollamudi and those of Drs. Kramer and Goeke.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand, the ALJ should be directed to (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for SSI and/or DIB.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Sadrena Stallworth was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


January 23, 2009                                               s/ Sharon L. Ovington
                                                                                Sharon L. Ovington
                                                                     United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).